## Robinson Township School District's Petition

*Karl D. Enzian, William S. Rahauser* and *Rahauser, Van der Voort, Royston & Robb*, for petitioner.

*James G. Legnard*, for additional petitioners.

ELLENBOGEN, J., December 10, 1946.—The facts presented in this case are the most shocking and disturbing ever to come before us. Unless corrected, they will profoundly affect the future of America and the basic fabric of our society.

Robinson Township is an average Pennsylvania country school district which pays its school teachers the average scale paid in similar districts in Pennsylvania. In many other States the scale is substantially lower. The plight of school teachers depicted in this case is thus typical of rural Pennsylvania and better than that which prevails in most of the other States.

It behooves our legislatures and all our people to take notice of the miserable economic condition of our school teachers, if they mean to prevent permanent harm to the next generation and to our democratic institutions. Such is human nature that it takes but little notice of averages and general statistics. The human mind does not form a vivid, living picture of the plight of our school teachers by reading about their minimum and

average salaries. Only specific examples, the recital and contemplation of the lives of individual teachers can make us understand the desperate economic plight of present-day teachers.

In this case we have, under oath, a vivid word picture of the intolerable economic level to which our teachers have been forced by the inflated price level of today and shortsighted school policies of yesterday.

Take the case of Edward J. Synowka.

Synowka has taught high school for 12 years. His subjects are general science, civics, and modern business training. He spent many useful years of his life and considerable money to prepare himself for the teaching profession. He studied at Duquesne University where he graduated with the degree of bachelor of arts and pursued his post graduate studies at the University of Pittsburgh, where he received a master's degree in education.

Synowka is a fine example of a citizen and a teacher. He is 36 years of age, is married, and has one child. He owns his home, subject to a $4,000 mortgage indebtedness. The yearly salary of Synowka is $1,800. From this salary the school board deducts his (withholding) income tax and his compulsory contribution to the State Retirement Fund. Out of it, he must pay a per capita tax to the local government, a membership fee in his professional association, a subscription fee to one or two professional magazines, and must buy a minimum amount of writing supplies. Add to that his expenses for his daily trip to and from school and for lunch at school. These preliminary "must" expenditures amount to about $60 a month, or $720 a year. This leaves Synowka $1,080 a year or $90 a month.

Thus, this splendid high school teacher, with 12 years' experience and with degrees of bachelor of arts and master in education, has available *$90 a month* with which to pay for shelter, clothing, and living ex-

penses for himself, his wife and child. As a teacher he must be well clothed and neatly groomed.

It is obvious that at today's prices Mr. Synowka cannot buy even the barest necessities of life.

The summer vacations are intended as a period of rest and study. But Synowka was compelled to take a job in a local mill as a timekeeper in order to supplement his income. But even that was not sufficient to permit him to make both ends meet. He was compelled to borrow at a loan company.

However, Mr. Synowka is by no means the lowest paid teacher. Miss Teresa E. Costa is also a high school teacher in Robinson Township. She testified that she graduated in 1944 from the State Teachers' College at Slippery Rock with the degree of bachelor of science and is now studying for her master's degree. She has been teaching for almost three years and is paid a salary of $1,600 a year. After deductions for her income tax and her retirement contribution, and after paying for other expenses incidental to her profession, she has left $860 a year, or *$71.66 a month*, with which to pay her living expenses and contribute her share for the support of a dependent mother and a young brother. As Mr. Synowka, she must be clothed well when she appears in school if she is to maintain her standing in the profession and discipline in the classroom.

The financial condition of this teacher is such that she must either get an increase in her salary or leave the teaching profession:

"Q. Miss Costa, do you feel too, as some of these other people do, and as the teachers have told Mr. McAnulty, that it will be impossible for you to continue on at your present salary?

"A. It will be impossible. I will have to go elsewhere unless I do get an increase in salary. It isn't a question of staying or not; I just can't stay."

Again, Miss Costa is not the lowest paid teacher. There is one teacher who receives only $1,500 a year, which, after necessary deductions and professional expenses, leaves him about $775 a year or about $65 a month.

Robinson Township has 29 teachers. Twenty-one of them receive $1,900 a year or less.

This is a short sketch of the financial condition of our teachers. These are the men and women who are responsible for the next generation. They must have the learning, the character, and the inspiration to transmit to our children the huge body of learning which has accumulated over centuries and make our sons and daughters understand and appreciate the higher values of our civilization. We depend on them to raise a generation of freedom-loving Americans who will understand our democratic institutions and the ways of our democratic life.

A good teacher is one who can inspire our youth with high purposes and high ideals. Teachers who must pinch pennies and live with their families on a level which permits only the barest minimum existence are not able to do that. They cannot transmit a true understanding of the values of individual freedom and of the dignity of man without which American democracy cannot live.

Teachers who have net incomes of $70 to $105 a month, such as these teachers do, cannot long perform that task. The education of our children and the future of America cannot long be safe in the hands of teachers who are paid less than men performing menial jobs, and who must go into debt in order to live.

This court is of the opinion that our democratic institutions and our Republic will be endangered unless the salaries paid to teachers are raised to a level which will be in keeping with the high function which they must perform in our society and which will permit them to live a life of comfort and dignity.

We have discussed the present economic condition of the teachers because an understanding of it is necessary to a decision of the difficult legal problems involved in this case. The teachers in Robinson Township have demanded and the school board is willing to allow them an increase of $200 for the present school term. However, the appropriation for salaries as contained in the present budget is not large enough for such an increase and there are no funds in other accounts which are not essential and which could be transferred to the salary account. But there are unappropriated revenues, which are sufficient in amount to permit such a salary increase.

Under the School Code of May 18, 1911, P. L. 309, such revenues cannot be appropriated after the budget has been finally adopted, unless the present situation constitutes an "emergency" within the meaning of the provisions of the School Code. There is no possibility for relief for the school teachers unless the present situation constitutes an "emergency" within the meaning of the Acts of July 18, 1935, P. L. 1192, sec. 2, and May 13, 1937, P. L. 605, sec. 3, 24 PS §610, which amend section 563 of the School Code of May 18, 1911, P. L. 309. This section provides:

"The board of school directors of each school district of the second, third, or fourth class shall, annually, at least thirty days prior to the adoption of the annual budget, prepare a proposed budget of the amount of funds that will be required by the school district in its several departments for the following fiscal year. . . .

"The board of school directors may, during any fiscal year, make additional appropriations or increase existing appropriations to meet emergencies, such as epidemics, floods, fire, or other catastrophies, the funds therefor to be provided from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans. Such temporary loans, when made, shall be approved by a two-thirds vote of the board of school directors.

"The board of school directors shall have power to authorize the transfer within the same fund of any unemcumbered balance, or any portion thereof, from one spending agency to another, . . ."

The question which is thus here presented in the petition for declaratory judgment is whether or not the unprecedented economic crisis in the life of the school teachers of Robinson Township constitutes an "emergency" within the meaning of the act of assembly. The term "emergency" cannot be construed in a vacuum, but must be related to the facts presented. The testimony in this case shows that because of the tremendous rise in prices in the last few months, the teachers of Robinson Township (and elsewhere) have been placed in a position where their present salaries are insufficient to meet even a minimum family budget. If their salaries cannot legally be raised, they will leave their teaching posts for more remunerative employment in such numbers that it will cripple the operations of the schools in Robinson Township. Moreover, the school district will not be able to replace them with suitable substitutes because trained substitutes are not available at the salary schedules set up in the budget.

Thus, unless it can raise the salaries of its teachers, the school district of Robinson Township is threatened with an immediate loss of such numbers of its school teachers as to bring about an interruption in the teaching of many classes and required subjects.

The statute refers to "emergencies, such as epidemics, floods, fire, or other catastrophies". The enumeration of physical disasters such as floods and fire, which would impair the usefulness of school buildings, and of epidemics which would endanger the health of the community, was not intended to limit the general term "emergencies" which precedes them to other physical catastrophies.

The statute does not limit the school board to emergencies of a "physical" nature. Had the legislature intended to do so, it could have easily said so. It de-

liberately inserted the broad term "emergencies" to provide for *any* emergency brought about by act of God or man which imperiled the school operations.

The immediate and actual danger to the operations of a school district posed by the threatened loss of efficient and qualified teaching personnel and the certain inability of replacing such teaching personnel is no less an emergency than a flood which imperils the usefulness of a school building.

In the case of Redstone Township School Directors et al. v. Verbanic et al., 44 D. & C. 347 (1942), Judge Dumbauld of Fayette County held that the term "emergency" did not permit an increase in salary of school teachers during the school year in excess of the budgetary provisions, but the factual situation in that case differs greatly from the extraordinary situation here presented.

The school budget of Robinson Township was made up, as required by law, in the early spring of 1946. The budget sessions were held in March and April of this year and the budget was finally adopted on May 17, 1946. This was long after the end of the war.

Up to that time the price level on goods and commodities was rising but was doing so slowly and gradually. There was no indication at that time, and the directors of the Robinson Township school district could not then forsee that the Office of Price Administration would suddenly be discarded and that the price level on goods and commodities would be permitted to leap up and reach unprecedented heights. School directors are mere mortals and not supermen and could not forsee in April 1946 that the price level in December 1946 would be so far out of reach of all the teachers as to threaten the continuity of school operations.

Man-made emergencies are no less destructive than physical disasters. Indeed, the last war has taught us that they often are far more disastrous.

The case of Cummings et al. v. Scranton et al., 348 Pa. 538 (1944), supports the position here taken. It

is there held that "The council of a city of the second class A does not have power to appropriate surplus funds, representing an unused balance under the general appropriation ordinance for the year, for the purpose of increasing salaries of some employees, *without a certification by the mayor of an existing emergency,* as required by the Act of March 7, 1901, P. L. 20, as amended by the Act of May 31, 1911, P. L. 461."

In the instant case the school board in its petition sets forth than an emergency exists and we hereby make an express finding of fact to that effect.

Our legislature recognized, in March 1943, that the war had brought about an emergency although up to that time the cost of living had been kept down with remarkable success. In the Act of March 19, 1943, P. L. 18, which deals with wages and salaries of public employes, it is expressly stated that "during the *emergency* arising out of present war conditions . . ." (italics supplied) political subdivisions of the Commonwealth are allowed to increase salaries and wages. Section 1 of this act reads as follows:

"Section 1. Cities, counties and other political subdivisions of this Commonwealth, are hereby authorized, during the emergency arising out of present war conditions and until the expiration of the fiscal year next following the cessation of hostilities, to pay to any officer (except officers elected by the people), employe or other person, whose salary or wage is paid out of such treasuries and is or may be fixed and limited by any act of the General Assembly, such compensation in addition to the amount fixed and limited by such act of General Assembly as the council, or other body having the power to appropriate money of such city, county or other political subdivision of the Commonwealth, may fix and determine."

The authority conferred by this act includes school districts. They are political subdivisions of the Com-

monwealth: 1 Dillon on Municipal Corporations (5th ed.), sec. 37; Goldtree v. City of San Diego, 8 Cal. App. 505, 97 Pac. 216.

Section 2 of this act permits the passage of ordinances authorizing the payment of additional compensation to employes, and section 3 suspends all acts of assembly inconsistent with this act.

The Act of 1943 is temporary. It expires at the end of "the fiscal year next following the cessation of hostilities". Since the war against Japan terminated in August 1945 this act does not expire until the end of the current fiscal year in June 1947 insofar as Robinson Township school district is concerned.

While by some of its terms the Act of 1943 seems to be limited to salaries fixed by an act of assembly, other provisions appear to go beyond that because they speak of "wages" and there are no wages of employes of cities, counties, and other political subdivisions which are fixed by acts of assembly. In the case of school teachers the minimum salary is fixed by act of assembly but the school boards have always had the power to pay over and above such minimum. To accomplish its purpose, the Act of 1943 must be liberally construed, but since we have already decided that the school district of Robinson Township has the power under the School Code to raise the salaries of its teachers during the current fiscal year because of the present emergency, it is unnecessary to determine whether or not the Act of 1943 also confers such power.

### Order

And now, to wit, December 10, 1946, the solicitors for Robinson Township school district are hereby directed to present an appropriate decree, in accordance with the foregoing opinion.

NOTE.—See also Charleroi Borough School District, 58 D. & C. 126. Cf. Ambridge Borough School District, 59 D. & C. 73; Hopewell Township School District, 59 D. & C. 249, Upper Moreland Twp. School District v. School Teachers Assn. of Upper Moreland Twp. et al., 59 D. & C. 267.